UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

| | |
|---|---|
| JAMES PARSHALL,<br><br>    Plaintiff,<br><br>  v.<br><br>TRILLIUM THERAPEUTICS INC., LUKE BESHAR, JAN SKVARSKA, HELEN TAYTON-MARTIN, PAUL WALKER, MICHAEL KAMARCK, PAOLO PUCCI, SCOTT MYERS, and CATHERINE MACKEY,<br><br>    Defendants. | Case No. _____<br><br>**COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**<br><br>JURY TRIAL DEMANDED |

Plaintiff James Parshall ("Plaintiff"), by and through his undersigned counsel, for his complaint against defendants, alleges upon personal knowledge with respect to himself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

## NATURE AND SUMMARY OF THE ACTION

1. This action is brought by Plaintiff against Trillium Therapeutics Inc. ("Trillium" or the "Company") and the members of Trillium's Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), and U.S. Securities and Exchange Commission ("SEC") Rule 14a-9, 17 C.F.R. § 240.14a-9, and to enjoin the vote on a proposed transaction, pursuant to which Trillium will be acquired by Pfizer Inc. ("Pfizer") through Pfizer's subsidiary PF Argentum Acquisition ULC ("Purchaser") (the "Proposed Transaction").

2. On August 23, 2021, Trillium and Pfizer issued a joint press release announcing that they had entered into an Arrangement Agreement dated August 20, 2021 (the "Merger Agreement"). Under the terms of the Merger Agreement, each Trillium shareholder will receive $18.50 in cash for each Trillium share they own (the "Merger Consideration"). The Proposed Transaction is valued at approximately $2.26 billion.

3. On September 27, 2021, Trillium filed a Schedule 14A Definitive Proxy Statement (the "Proxy Statement") with the SEC. The Proxy Statement, which recommends that Trillium stockholders vote in favor of the Proposed Transaction, omits or misrepresents material information concerning, among other things: (i) Trillium management's financial projections; (ii) the data and inputs underlying the financial valuation analyses that support the fairness opinion provided by the Company's financial advisor, Centerview Partners LLC ("Centerview"); and (iii) Company insiders' potential conflicts of interest. The failure to adequately disclose such material information constitutes a violation of Sections 14(a) and 20(a) of the Exchange Act as Trillium stockholders need such information in order to make a fully informed decision whether to vote in favor of the Proposed Transaction or seek appraisal.

4. In short, unless remedied, Trillium's public stockholders will be forced to make a voting or appraisal decision on the Proposed Transaction without full disclosure of all material information concerning the Proposed Transaction being provided to them. Plaintiff seeks to enjoin the stockholder vote on the Proposed Transaction unless and until such Exchange Act violations are cured.

**JURISDICTION AND VENUE**

5. This Court has jurisdiction over the claims asserted herein for violations of Sections 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder pursuant to

Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. § 1331 (federal question jurisdiction).

6. This Court has jurisdiction over the defendants because each defendant is either a corporation that conducts business in and maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because defendants are found or are inhabitants or transact business in this District. Moreover, Trillium's common stock trades on the Nasdaq Capital Market, which is headquartered in this District, rendering venue in this District appropriate.

## THE PARTIES

8. Plaintiff is, and has been at all times relevant hereto, a continuous stockholder of Trillium.

9. Defendant Trillium is a British Columbia, Canada corporation, with its principal executive offices located at 100 Cambridge Park Drive, Suite 510, Cambridge, Massachusetts, 02140. Trillium is an immuno-oncology company developing innovative therapies for the treatment of cancer. Trillium's shares trade on the Nasdaq Capital Market under the ticker symbol "TRIL."

10. Defendant Luke Beshar ("Beshar") has been a director of the Company since March 10, 2014.

11. Defendant Jan Skvarka ("Skvarka") has been President, Chief Executive Officer ("CEO"), and a director of the Company since September 25, 2019.

12. Defendant Helen Tayton-Martin ("Tayton-Martin") has been a director of the Company since October 1, 2017.

13. Defendant Paul Walker ("Walker") has been a director of the Company since February 6, 2020.

14. Defendant Michael Kamarck ("Kamarck") has been a director of the Company since September 17, 2020.

15. Defendant Paolo Pucci ("Pucci") has been a director of the Company since November 12, 2020.

16. Defendant Scott Myers ("Myers") has been a director of the Company since April 28, 2021.

17. Defendant Catherine Mackey ("Mackey") has been a director of the Company since June 30, 2021.

18. Defendants identified in paragraphs 10-17 are referred to herein as the "Board" or the "Individual Defendants."

## OTHER RELEVANT ENTITIES

19. Pfizer is a Delaware corporation with its principal executive offices located at 235 East 42nd Street, New York, NY 10017. Pfizer is a research-based, global biopharmaceutical company. Pfizer applies science and its global resources to bring therapies to people that extend and significantly improve their lives through the discovery, development, manufacture, marketing, sale and distribution of biopharmaceutical products worldwide. Pfizer offers medicines and vaccines in various therapeutic areas, including cardiovascular metabolic and pain under the Eliquis, Chantix/Champix, and Premarin family brands; biologics, small molecules, immunotherapies, and biosimilars under the Ibrance, Xtandi, Sutent, Inlyta, Retacrit, Lorbrena,

and Braftovi brands; and sterile injectable and anti-infective medicines under the Sulperazon, Medrol, Zithromax, Vfend, and Panzyga brands. Pfizer's common stock trades on the New York Stock Exchange under the ticker symbol "PFE."

20. Purchaser is an unlimited liability company and a wholly-owned indirect subsidiary of Pfizer.

## SUBSTANTIVE ALLEGATIONS

**Background of the Company**

21. Trillium was formerly known as Stem Cell Therapeutics Corp. and changed its name to Trillium Therapeutics Inc. in June 2014. The Company's focus is on developing inhibitors of CD47, a checkpoint of the innate immune system. CD47 is emerging as a promising next generation immuno-oncology target following the scientific, clinical and commercial success of T-cell checkpoint inhibitors. Trillium has two product candidates in early stages of clinical development – TTI-622 (a SIRPα-IgG4 Fc fusion protein) and TTI-621 (a SIRPα-IgG1 Fc fusion protein). Both molecules are highly differentiated from the rest of the CD47 field by meaningful monotherapy activity demonstrated across a range of hematologic malignancies, and minimal binding to red blood cells, hence reducing the risk of anemia, a common side effect of some other CD47 agents. Both agents have been well tolerated and have demonstrated monotherapy activity in patients with B- and T-cell lymphomas. In 2021, the Company's immediate goal is to complete ongoing dose escalation studies, and initiate a phase 1b/2 program across a range of both hematologic and solid tumor malignancies.

22. On August 13, 2021, the Company announced its second quarter 2021 financial results. In the press release announcing the Company's financial results, defendant Skvarka stated:

> The second quarter 2021 was an important period for Trillium, during which time we communicated our go-forward strategy and began executing against it. We

announced seven priority indications and nine patient settings, with six studies expected to initiate in 2021.  As of today, we have already initiated four studies, including in multiple myeloma, acute myeloid leukemia (p53 mutated and wild type), and leiomyosarcoma.  With our operating plan being on track, our focus is on strong execution, to ensure a robust flow of new data starting in 4Q 2021 and 2022.  We continue to be very excited about Trillium's position as a leading CD47 company.

**The Proposed Transaction**

23. On August 23, 2021, Trillium and Pfizer issued a joint press release announcing the Proposed Transaction, which states, in relevant part:

> NEW YORK and CAMBRIDGE, Mass., Aug. 23, 2021 -- Pfizer Inc. (NYSE: PFE) and Trillium Therapeutics Inc. (NASDAQ/TSX: TRIL) today announced that the companies have entered into a definitive agreement under which Pfizer will acquire Trillium, a clinical stage immuno-oncology company developing innovative therapies for the treatment of cancer.  Under the terms of the agreement, Pfizer will acquire all outstanding shares of Trillium not already owned by Pfizer for an implied equity value of $2.26 billion, or $18.50 per share, in cash.  This represents a 118% premium to the 60-day weighted average price for Trillium.
>
> Trillium's portfolio includes biologics that are designed to enhance the ability of patients' innate immune system to detect and destroy cancer cells.  Its two lead molecules, TTI-622 and TTI-621, block the signal-regulatory protein α (SIRPα)–CD47 axis, which is emerging as a key immune checkpoint in hematological malignancies.  TTI-622 and TTI-621 are novel, potentially best-in-class SIRPα-Fc fusion proteins that are currently in Phase 1b/2 development across several indications, with a focus on hematological malignancies.
>
> "Today's announcement reinforces our commitment to pursue scientific breakthroughs with the addition of potentially best-in-class molecules to our innovative pipeline," said Andy Schmeltz, Global President & General Manager, Pfizer Oncology.  "The proposed acquisition of Trillium builds on our strong track record of leadership in Oncology, enhancing our hematology portfolio as we strive to improve outcomes for people living with blood cancers around the globe.  Our deep experience in understanding the science of blood cancers, along with the diverse knowledge base we have developed across our growing hematology portfolio of eight approved and investigational therapies, provide us with a foundation to advance these important potential medicines to patients who need them."
>
> Hematological malignancies are cancers that affect the blood, bone marrow, and lymph nodes.  This classification includes various types of leukemia, multiple myeloma, and lymphoma.  More than 1 million people worldwide were diagnosed

with a blood cancer in 2020, representing almost 6% of all cancer diagnoses globally. In 2020, more than 700,000 people worldwide died from a form of blood cancer.

"We're delighted to announce Pfizer's proposed acquisition of Trillium. Today's announcement reflects Trillium's potentially best in class SIRPα–CD47 status and contribution to immuno-oncology," said Dr. Jan Skvarka, Chief Executive Officer of Trillium. "Trillium has the only known SIRPα–CD47 targeting molecules with clinically meaningful monotherapy responses as well as a strong basis for combination therapies, which is supported by preclinical evidence with a diverse set of therapeutic agents. With Pfizer's global reach and deep capabilities, we believe our programs will advance more quickly to the patients we've always aspired to serve. We believe this is a good outcome for patients and our shareholders."

In clinical studies to-date, TTI-622 and TTI-621 have demonstrated activity as monotherapy in relapsed or refractory lymphoid malignancies, including Diffuse Large B-cell Lymphoma (DLBCL), Peripheral T-cell lymphoma (PTCL), Follicular Lymphoma (FL), and other lymphoid malignancies. As of July 26, 2021, Phase 1 data for TTI-622 in 30 response-evaluable patients have shown deep and durable responses in heavily pretreated patients, including two complete responses (CRs), one lasting over 114 weeks, with responses ongoing. TTI-622 and TTI-621 are currently the only known CD47-targeted molecules that have demonstrated meaningful single agent activity and CRs in multiple hematological malignancies. Thus far, adverse events (AEs) reported with TTI-622 and TTI-621 have been manageable. Related Grade 3 and 4 AEs with TTI-622 were rare and limited to transient cytopenias. In particular, the molecules demonstrate minimal red blood cell binding and few reported cases of anemia, an observed risk with other CD47-targeted approaches. Further data are expected to be shared at a forthcoming medical conference.

"We are encouraged by the early clinical data for TTI-622 and TTI-621 monotherapy for patients with heavily pretreated lymphoid malignancies and early encouraging activity for TTI-622 in patients with multiple myeloma. Just as PD-1 and PD-L1 blockers have proven to be effective immuno-therapeutics for many solid tumors, the SIRPα-CD47 interaction defines a second key immune checkpoint for which disrupting agents are expected to become another important backbone immunotherapy for multiple types of cancer, especially hematological cancers," said Chris Boshoff, MD, PhD, Chief Development Officer, Oncology, Pfizer Global Product Development. "Utilizing Pfizer's leading research and global development capabilities, we plan to accelerate the clinical development of SIRPα fusion proteins as a potential new scientific breakthrough and explore combinations within our own portfolio and with innovative next-generation medicines for hematological malignancies."

In September 2020, as part of the Pfizer Breakthrough Growth Initiative (PBGI), Pfizer invested $25 million in Trillium and Jeff Settleman, Senior Vice President and Chief Scientific Officer of Pfizer's Oncology Research & Development Group, was named to Trillium's Scientific Advisory Board. Established in June 2020, PBGI's goal is to provide funding for scientific research as well as access to Pfizer's experts to ensure the continuity of clinical programs that could be of potential strategic interest for Pfizer. Pfizer has committed to providing up to $500 million in total funding to the PBGI.

**Additional Transaction Details**

The proposed acquisition of Trillium is to be completed by way of a statutory plan of arrangement under the Business Corporations Act (British Columbia) and subject to customary closing conditions, including approval of 66⅔% of the votes cast by Trillium shareholders, voting together as one class, at a special meeting of Trillium and approval of 66⅔% of the votes cast by Trillium shareholders and warrant holders, voting together as one class, at a special meeting of Trillium. Completion of the acquisition is also subject to court and regulatory approval, as well as certain other closing conditions customary for transactions of this nature.

Pfizer's financial advisors for the transaction are BofA Securities, Inc., with Ropes & Gray LLP and Norton Rose Fulbright Canada LLP acting as its legal advisors. Centerview Partners LLC served as Trillium's financial advisor, while Goodwin Procter LLP and Baker McKenzie LLP (Canada) served as its legal advisors.

**Insiders' Interests in the Proposed Transaction**

24. Trillium insiders are the primary beneficiaries of the Proposed Transaction, not the Company's public stockholders. The Board and the Company's executive officers are conflicted because they will have secured unique benefits for themselves from the Proposed Transaction not available to Plaintiff and the public stockholders of Trillium.

25. Notably, Trillium insiders stand to reap substantial financial benefits for securing the deal with Pfizer. Pursuant to the Merger Agreement, all outstanding Company options and deferred share units ("DSUs") will convert into the right to receive cash payments. The following table summarizes the value of ordinary shares, options, and DSUs that Company insiders stand to receive:

| Name | Number of Common Shares (#) | Value of Common Shares (#) | Number of Common Shares Underlying Options (#) | Value of Options[1] ($) | Number of DSUs (#) | Value of DSUs ($) |
|---|---|---|---|---|---|---|
| **Executive Officers:** | | | | | | |
| Jan Skvarka | — | — | 1,959,500 | $28,475,932 | — | — |
| Robert Uger | — | — | 468,222 | $ 4,671,877 | — | — |
| Ingmar Bruns | — | — | 400,000 | $ 1,756,000 | — | — |
| Penka Petrova | — | — | 316,822 | $ 3,346,963 | — | — |
| James Parsons | — | — | 461,385 | $ 4,769,193 | — | — |
| Rosemary Harrison | 75 | $1,388 | 180,000 | $ 790,200 | — | — |
| Benjamin Looker | — | — | 190,000 | $ 1,708,100 | — | — |
| **Non-Employee Directors:** | | | | | | |
| Luke Beshar | — | — | 46,666 | $ 282,276 | 547,656 | $10,131,636 |
| Michael Kamarck | — | — | 67,000 | $ 249,910 | — | — |
| Catherine Mackey | — | — | 67,000 | $ 589,600 | — | — |
| Scott Myers | — | — | 67,000 | $ 602,330 | — | — |
| Paolo Pucci | — | — | 67,000 | $ 201,000 | — | — |
| Helen Tayton-Martin | — | — | 40,000 | $ 258,800 | 498,294 | $ 9,218,439 |
| Paul Walker[2] | — | — | 40,000 | $ 258,800 | — | — |

26. Further, under the terms of the Merger Agreement, Trillium may implement a one-time cash recognition and retention program in an aggregate pool of up to $2.0 million. Trillium's executive officers are expected to be granted bonuses under the program in the aggregate amount of up to $1.45 million.

27. In addition, if they are terminated in connection with the Proposed Transaction, Trillium insiders stand to receive substantial cash severance payments, as set forth in the following table:

| Name | Cash[2] ($) | Equity[3] ($) | Perquisites/Benefits[2] ($) | Other[4] ($) | Total ($) |
|---|---|---|---|---|---|
| Jan Skvarka | $825,000 | $24,049,165 | $55,074 | $275,000 | $25,204,239 |
| Robert Uger | $718,121 | $ 4,087,134 | $31,829 | $172,693 | $ 5,009,777 |
| Ingmar Bruns | $440,000 | $ 1,756,000 | $55,074 | $976,000 | $ 3,227,074 |
| Penka Petrova | $626,199 | $ 2,841,750 | $31,097 | $159,078 | $ 3,658,124 |
| James Parsons | $452,255 | $ 3,100,550 | $23,780 | $159,078 | $ 3,735,663 |

**The Proxy Statement Contains Material Misstatements and Omissions**

28. The defendants filed a materially incomplete and misleading Proxy Statement with the SEC and disseminated it to Trillium's stockholders. The Proxy Statement misrepresents or omits material information that is necessary for the Company's stockholders to make an informed decision whether to vote their shares in favor of the Proposed Transaction or seek appraisal.

29. Specifically, as set forth below, the Proxy Statement fails to provide Company stockholders with material information or provides them with materially misleading information concerning: (i) the Company's financial projections; (ii) the data and inputs underlying the financial valuation analyses performed by the Company's financial advisor Centerview; and (iii) Company insiders' potential conflicts of interest. Accordingly, Trillium stockholders are being asked to vote in favor of the Proposed Transaction or seek appraisal without all material information at their disposal.

*Material Omissions Concerning the Company's Financial Projections*

30. The Proxy Statement fails to disclose material information concerning the Company's financial projections.

31. For example, the Proxy Statement sets forth that at an August 6, 2021 Board meeting,

> The meeting participants also discussed management's preliminary long-range plan, including the related methodology, the underlying assumptions and related risks, and the preliminary financial forecasts prepared based on such long-range plan (which the Board continued to discuss and approved with minor refinements at the meeting of the Board held on August 18, 2021).

Proxy Statement at 23. The Proxy Statement, however, fails to disclose the Company's preliminary financial forecasts, as well as the assumptions and related risks underlying the preliminary forecasts.

32. Moreover, the Proxy Statement sets forth:

> [I]n connection with its strategic planning process and at the direction of the Board in connection with its evaluation of the proposed transaction with Pfizer, Trillium's senior management prepared long-range projections of revenue and costs for fiscal years 2021 through 2042 based on its view of the prospects for Trillium on a stand-alone basis with respect to Trillium's programs for TTI-621 and TTI-622 (the "Forecasts"). These Forecasts reflect a risk-adjusted outlook and were based on certain internal assumptions about the probability of technical success and regulatory approval, epidemiology, timing of commercial launch, sales ramp, market size, market share, pricing, reimbursement, duration of therapy, competition, partnering arrangements, market exclusivity, estimated costs and expenses, effective tax rate and utilization of net operating losses, ability to raise future capital, and other relevant factors relating to Trillium and its product candidates.

*Id*. at 35-36. Yet, the Proxy Statement fails to disclose a quantification of the assumptions underlying the risk-adjusted projections. The Proxy Statement further fails to disclose the non-risk-adjusted projections so Trillium stockholders can evaluate the financial impact the Company's risk-adjustments had on the projections.

33. The omission of this information renders the statements in the "Certain Prospective Financial Information" section of the Proxy Statement false and/or materially misleading in contravention of the Exchange Act.

***Material Omissions Concerning Centerview's Financial Analyses***

34. The Proxy Statement fails to disclose material information concerning Centerview's financial analyses.

35. The Proxy Statement describes Centerview's fairness opinion and the various valuation analyses performed in support of its opinion. However, the description of Centerview's fairness opinion and analyses fails to include key inputs and assumptions underlying these analyses. Without this information, as described below, Trillium's public stockholders are unable to fully understand these analyses and, thus, are unable to determine what weight, if any, to place

on Centerview's fairness opinion in determining whether to vote in favor of the Proposed Transaction or seek appraisal.

36. With respect to Centerview's *Discounted Cash Flow Analysis*, the Proxy Statement fails to disclose: (i) quantification of the implied terminal value of Trillium; (ii) Centerview's basis for assuming that unlevered free cash flows would decline in perpetuity after December 31, 2042 at a rate of 40%; (iii) quantification of the inputs and assumptions underlying the discount rates ranging from 11.0% to 13.0%; and (iv) the number of fully-diluted outstanding shares of Trillium used in the analysis.

37. With respect to Centerview's *Analyst Price Target Analysis*, the Proxy Statement fails to disclose: (i) the individual price targets observed; and (ii) the sources thereof.

38. With respect to Centerview's *Premiums Paid Analysis*, the Proxy Statement fails to disclose: (i) the transactions observed; and (ii) the individual premiums observed for each of the transactions.

39. The omission of this information renders the statements in the "Fairness Opinion of Centerview Partners LLC" section of the Proxy Statement false and/or materially misleading in contravention of the Exchange Act.

*Material Omissions Concerning Company Insiders' Potential Conflicts of Interest*

40. The Proxy Statement fails to disclose material information concerning the potential conflicts of interest faced by Trillium insiders.

41. For example, the Proxy Statement sets forth that at an August 18, 2021 Board meeting, "the Board discussed potential proposals for retention and severance programs for Trillium employees, as well as the proposed treatment of 2021 annual bonuses, in the event that a transaction were to proceed, which proposals were consistent with the prior discussion of the

Compensation Committee." *Id.* At 24.  The Proxy Statement, however, fails to disclose the details of all employment and retention-related discussions and negotiations that occurred between Pfizer and Trillium's executive officers, including who participated in all such communications, when they occurred and their content.  The Proxy Statement further fails to disclose whether any of Pfizer's proposals or indications of interest mentioned management retention in the combined company following the Proposed Transaction or the purchase of or participation in the equity of the surviving corporation.

42.     Communications regarding post-transaction employment and merger-related benefits during the negotiation of the underlying transaction must be disclosed to shareholders.  This information is necessary for shareholders to understand potential conflicts of interest of management and the Board, as that information provides illumination concerning motivations that would prevent fiduciaries from acting solely in the best interests of the Company's stockholders.

43.     The omission of this information renders the statements in the "Background of the Arrangement" and "Interests of Directors and Officers in the Arrangement" sections of the Proxy Statement false and/or materially misleading in contravention of the Exchange Act.

44.     The Individual Defendants were aware of their duty to disclose the above-referenced omitted information and acted negligently (if not deliberately) in failing to include this information in the Proxy Statement.  Absent disclosure of the foregoing material information prior to the stockholder vote on the Proposed Transaction, Plaintiff and the other stockholders of Trillium will be unable to make a sufficiently informed voting or appraisal decision in connection with the Proposed Transaction and are thus threatened with irreparable harm warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

### COUNT I

**Claims Against All Defendants for Violations of Section 14(a) of the Exchange Act and Rule 14a-9 Promulgated Thereunder**

45. Plaintiff repeats all previous allegations as if set forth in full.

46. During the relevant period, defendants disseminated the false and misleading Proxy Statement specified above, which failed to disclose material facts necessary to make the statements, in light of the circumstances under which they were made, not misleading in violation of Section 14(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder.

47. By virtue of their positions within the Company, the defendants were aware of this information and of their duty to disclose this information in the Proxy Statement. The Proxy Statement was prepared, reviewed, and/or disseminated by the defendants. It misrepresented and/or omitted material facts, including material information about the Company's financial projections, the data and inputs underlying the financial valuation analyses performed by the Company's financial advisor Centerview, and Company insiders' potential conflicts of interest. The defendants were at least negligent in filing the Proxy Statement with these materially false and misleading statements.

48. The omissions and false and misleading statements in the Proxy Statement are material in that a reasonable stockholder would consider them important in deciding how to vote on the Proposed Transaction.

49. By reason of the foregoing, the defendants have violated Section 14(a) of the Exchange Act and SEC Rule 14a-9(a) promulgated thereunder.

50. Because of the false and misleading statements in the Proxy Statement, Plaintiff is threatened with irreparable harm, rendering money damages inadequate. Therefore, injunctive relief is appropriate to ensure defendants' misconduct is corrected.

## COUNT II

### Claims Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act

51. Plaintiff repeats all previous allegations as if set forth in full.

52. The Individual Defendants acted as controlling persons of Trillium within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of Trillium, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading.

53. Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

54. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein and exercised the same. The Proxy Statement at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction. They were, thus, directly involved in the making of the Proxy Statement.

55. In addition, as the Proxy Statement sets forth at length, and as described herein, the Individual Defendants were each involved in negotiating, reviewing, and approving the Proposed Transaction. The Proxy Statement purports to describe the various issues and information that they reviewed and considered—descriptions the Company directors had input into.

56. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

57. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and SEC Rule 14a-9, promulgated thereunder, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of defendants' conduct, Trillium stockholders will be irreparably harmed.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff demands judgment and preliminary and permanent relief, including injunctive relief, in his favor on behalf of Trillium, and against defendants, as follows:

A. Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction and any vote on the Proposed Transaction, unless and until defendants disclose and disseminate the material information identified above to Trillium stockholders;

B. In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

C. Declaring that defendants violated Sections 14(a) and/or 20(a) of the Exchange Act, as well as SEC Rule 14a-9 promulgated thereunder;

D.   Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E.   Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated: October 13, 2021

**WEISSLAW LLP**

By /s/ Richard A. Acocelli
Richard A. Acocelli
305 Broadway, 7th Floor
New York, NY 10007
Tel: (212) 682-3025
Fax: (212) 682-3010
Email: racocelli@weisslawllp.com

*Attorneys for Plaintiff*